**INTERNATIONAL FOOD & BEVERAGE SYSTEMS,**
Plaintiff,

v.

**CITY OF FORT LAUDERDALE, Defendant.**

No. 85–6527–CIV–GONZALES.

United States District Court, S.D. Florida, N.D.

Aug. 9, 1985.

**1518**

Bruce Randall, Ft. Lauderdale, Fla., Richard Wilson, Orlando, Fla., for plaintiff.

Lindsay Payne, Ft. Lauderdale, Fla., for defendant.

## FINAL JUDGMENT

GONZALEZ, District Judge.

THE ISSUE presented in this case is whether City of Fort Lauderdale Zoning Ordinances C–84–91 and C–84–100, which restrict the location of "alcholic beverage establishments" permitting nudity to no closer than 750 feet of other similar establishments, residential sections, churches, schools and parks, violate the First Amendment to the United States Constitution. After examining the evidence and memoranda, and considering the testimony of witnesses and the arguments of counsel, the court finds that the subject Ordinances are unconstitutional as applied and the City is hereby permanently enjoined from enforcing them.

### I.

On October 16, 1984, the City Commission of Fort Lauderdale, Florida, passed Ordinance No. C–84–91. See Appendix A, attached. The Commission subsequently amended that Ordinance on December 4, 1984 by enacting Ordinance No. C–84–100. See Appendix B, attached. Both Ordinances were properly passed pursuant to State and City laws.

Essentially the Ordinances prohibit an establishment in which alcoholic beverages are dispensed from permitting nudity if it is located within 750 feet of any parcel of land used or zoned for residential use, or when it is located within 750 feet of any parcel of land upon which is located a church, school, public park, playground or another beverage establishment permitting nudity.

Plaintiff International Food & Beverage Systems, a Florida partnership doing business as the "Solid Gold," obtained the leasehold rights to a building located at 2650 North Federal Highway, Fort Lauderdale, subsequent to enactment of the subject Ordinances. Plaintiff desires to use the property for a nightclub in which alcoholic beverages are served, and to present, as entertainment for its patrons, female dancers who will perform non-obscene dances while nude or semi-nude. The Solid Gold is located within 750 feet of a residential section and, therefore, is prohibited from operating in its proposed form under Ordinances No. C–84–91 and C–84–100.

In order to open as planned, plaintiff has challenged the constitutionality of the subject Ordinances on First Amendment grounds. On July 12, 1985, plaintiff filed a Complaint for Preliminary Injunction, Permanent Injunction and a Declaratory Judgment.

This court has subject-matter jurisdiction over this case, and plaintiff has standing to challenge the City Ordinances.

## II.

Nude dancing in a business establishment is a constitutionally-protected form of expression. *See, e.g., Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *see generally Grand Faloon Tavern, Inc. v. Wicker,* 670 F.2d 943 (11th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982). Local governments may attempt to control the location of "adult" entertainment establishments like plaintiff's through zoning ordinances, *Young v. American Mini Theaters, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), but the regulation must be drafted and enforceable within constitutional limits. *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).

The Supreme Court of the United States addressed the constitutional standard by which a regulation affecting speech is measured in *American Mini Theaters, supra.* The Court there recognized the power of the Detroit City Council to control the location of "adult" theaters in Detroit. The City had been experiencing considerable difficulty controlling crime and residential blight caused by the operation of such theaters for some ten years, and finally enacted an ordinance that restricted adult theaters from any location within 1,000 feet of any two other "adult entertainment" and 500 feet of a residential area. 96 S.Ct. at 2443–44 & n. 3. A plurality of the Court upheld the zoning ordinance as a reasonable time, place and manner restriction despite the fact that the regulation was content-based. Justice Stevens reasoned first, that the ordinance did not regulate speech on the basis of government approval or disapproval of the particular expressions point of view, *id.* at 2452; and second, sexually-explicit expression has "lesser" value than other protected speech, particularly political debate. *Id.* The plurality then applied a "balancing test" which it quickly resolved in favor of the government on the basis of a finding that De-

troit's zoning ordinance did not greatly restrict access to sexually-explicit expression since it left enough sites for "adult" theaters to accommodate all patrons. *Id.* at 2448.

Mr. Justice Powell, who concurred in the judgment, chose to examine whether the ordinance stifled speech or restricted access thereto rather than reach a result based on the type of speech in question. Justice Powell looked to the Court's decision in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), for the appropriate standard of review. A challenged regulation affecting speech is constitutional only if (1) it is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free speech; and (4) the incidental restriction on First Amendment freedom is no greater than essential to further that interest. *Id.* at 1679. The City of Fort Lauderdale bears the burden of proving that the elements of this test are satisfied by a preponderance of the evidence. *Playtime Theaters, Inc. v. City of Renton,* 748 F.2d 527, 535 (9th Cir.1984) (citing *First National Bank v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978)).

Circuit courts and legal scholars have treated Justice Stevens approach in *American Mini Theaters* as an aberration in First Amendment jurisprudence, for his analysis would have the courts judge the societal worth of each class of expression. Instead, most courts follow the *O'Brien* test, additionally reasoning that it was the concurring opinion—and the analysis therein—that permitted the Court to uphold the Detroit zoning ordinance. This court follows the lead of the Eleventh Circuit and also applies the *O'Brien* standard in gauging the constitutionality of Fort Lauderdale's Ordinances. *See Grand Faloon Tavern, Inc. v. Wicker,* 670 F.2d 943 (11th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982).

## III.

█ The plaintiff concedes that the City of Fort Lauderdale has the constitutional power to enact a zoning ordinance regulating the location of alcoholic beverage establishments that permit nudity.

*O'Brien* next requires the City to prove that the Ordinances further an important or substantial governmental interest. In that regard, the City offers the testimony of its Planning Director, Charles H. Ritchie, to show that Ordinances C–84–91 and C–84–100 were designed "to preserve public peace and good order" and maintain property values in areas around residential sections, parks, schools and the like. A partial transcript of the City Commission Meeting of October 16, 1984, Plaintiff's Exhibit 29, attached as Appendix C, is designed to buttress Mr. Ritchie's testimony. While the transcript does substantiate his testimony, *see* p. 1, it also reveals that the City hurriedly enacted Ordinance No. C–84–91 for fear that the Centerfold Lounge—an adult nightclub featuring nude reviews and serving alcoholic beverages— was about to open shop within the City's limits. *Id.* at 2. Consider an excerpt from the Commission meeting.

> *Comm. Young:* Why I ask is because I presume they were from the Centerfold Lounge, but they called I guess last Friday afternoon wanting to know if this would affect them and I said from what I've seen of your sign, I don't know where you are going. Are they already licensed in Fort Lauderdale—what is their location?
>
> *Mr. Ritchie:* I do not know where the Centerfold Lounge is moving at the current time. They are in the unincorporated area.
>
> *Comm. Young:* They were in Dania before.
>
> *Comm. Young:* This source says they were coming to Fort Lauderdale.
>
> *Connie Hoffman:* This ordinance, it takes effect immediately, doesn't it?
>
> *Don Hall:* Lets take a look at it. I think so.
>
> *Comm. Young:* They may invite you but not me.
>
> . . . .
>
> *Don Hall:* I think whoever introduced it should introduce it with the amendment that Section 5 should read "That this ordinance shall be in full force and effect immediately following its final passage".

The inference—if not the plain meaning—to be drawn from the Commissioners' dialogue is that Ordinance No. C–84–91 and its successor were designed to suppress a constitutionally protected form of expression.[1] *See Avalon Cinema Corp. v. Thompson,* 667 F.2d 659 (8th Cir.1981).

The City would have the court find the Ordinances constitutional nonetheless because it also had a legitimate and compelling reason for enacting the regulations. This argument, too, must be rejected, for the City fails to satisfy the court that its desire "to preserve public peace and good order" and maintain property values was anything but a pretext for a prior restraint on adult entertainment.

*American Mini Theaters* and its progeny teach that for a government to regulate speech-related activities, there must be a well-documented history of concern about the undesirable effect of "adult" entertainment on the relevant community. The City of Detroit had been trying to control these problems for ten years before finally enacting an ordinance that was sufficiently narrow to pass constitutional muster. Likewise, in *Grand Faloon Tavern, Inc. v. Wicker,* 670 F.2d 943 (11th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982), the court of appeals upheld a Cocoa Beach, Florida ordinance proscribing the actual or simulated exposure of various "private parts or female breasts in establishments selling alcoholic beverages" because the regulation was "provoked" by substantial evidence linking "extensive" criminal activity with those lo-

---

1. Ironically, the Centerfold Lounge, the very object of the City's concern, is thus far the only "adult" alcoholic beverage establishment to be licensed under the subject Ordinances. Although able to find a location to operate, economic factors have since forced it to change from an "adult" to a country-and-western format.

cations. 670 F.2d at 944–45 & n. 3. In contrast to *American Mini Theaters* and *Wicker*, a Pensacola ordinance which barred topless dancing in establishments serving alcohol was struck down because the City "failed to produce evidence that any legitimate government interest motivated the city council to restrict the communication involved. . . ." *Krueger v. City of Pensacola*, 759 F.2d 851, 852 (11th Cir. 1985).

The court does not favor the analysis of *American Mini Theaters, Wicker* and *Krueger* in this regard, because those decisions require jurists to make subjective evaluations about matters that should be judged only by objective criteria. Stop a dozen citizens on the street and each will provide a different definition of what is unacceptable expression. It is precisely for that reason that constitutional analysis uses as its touchstone objective standards to evaluate speech. Conventional thinking in the zoning cases seems to direct the trial court to identify what was on the minds of the politicians when they enacted the regulation. Additionally, local governments are required to establish before the fact that "adult" entertainment produces a deleterious effect on the community. This court does not pretend to be clairvoyant. Any local government can hire a group of experts to say that "adult" entertainment produces undesirable consequences. To perpetuate the legal fiction that a city must first establish objective evidence in support of a legitimate reason for enacting a zoning regulation ignores the basic truth that "adult" entertainment causes similar problems in municipalities of similar composition and character.[2] Local governments should not have to re-invent the wheel every time a zoning ordinance is enacted regulating nude dancing in establishments serving alcohol. As the Seventh Circuit observed in *Genusa v. City of Peoria*, 619 F.2d 1203, 1211 (7th Cir.1980), "a city need not await deterioration in order to act."

Assuming, *arguendo*, that the City of Fort Lauderdale's Ordinances satisfied the first three prongs of the *O'Brien* test, the court still finds them unconstitutional because the regulations are not the least restrictive means of controlling First Amendment activities.

The evidence adduced at the hearing on this matter revealed some twenty-five locations around the City where businesses like plaintiff's could open their doors. Plaintiff's Exhibit 1. The City admits that at least three of these locations are no longer available since the enactment of Ordinance No. C–84–100. Of the rest, the majority are located in areas that are so patently unsuitable for businesses like plaintiff's that the regulations effectively zone the subject "adult" entertainment out of the City. One proposed site, for example, is located at the City's well-fields on the outskirts of town; several others are near the airport, where much of the land is either condemned or undergoing drastic change because of new expressway construction.

Many others, although not within 750 feet of areas zoned residential, are nevertheless, unavailable because of the existence of non-conforming residential uses still found in areas zoned "business" or "industrial."

■ The court reaches this particular result with some hesitation, because any proposed location—other than the one plaintiff wants to use—can be faulted when subject to close scrutiny. The Constitution does not grant plaintiff the right to be a business success or failure; *it simply guarantees him the opportunity to try.* Accordingly, the City has a corresponding duty to make reasonably available suitably zoned property within its confines where plaintiff might have a reasonable chance to operate. How many and how good must those sites be to survive First Amendment scrutiny is difficult to say. Citing the district court opinion, the Supreme Court in *American Mini Theaters* observed that there were "myriad locations in the City of Detroit which must be over 1,000 feet from existing regulated establishments." 96 S.Ct. at

---

2. Equally true is the fact that any local government can get a group of experts to opine that

"adult" entertainment will cause crime and reduce property values.

2453 n. 35. A dozen or so potential sites in the City of Fort Lauderdale does not a "myriad" make. *See also Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Playtime Theaters, Inc. v. City of Renton,* 748 F.2d 527 (9th Cir.1984); *Alexander v. City of Minneapolis,* 698 F.2d 936 (8th Cir. 1983); *Basiardanes v. City of Galveston,* 682 F.2d 1203 (5th Cir.1982).

■ The City's restriction on available sites also denies or hinders the public's First Amendment right to patronize plaintiff's establishment. Despite Justice Steven's implied suggestion in *American Mini Theaters* that the right of an individual to speak is distinguishable from the public's right to know, this court respectfully recognizes the correlative relationship of the two. The government can control speech with reasonable and not overly restrictive regulations, but those regulations cannot be drafted so as to interfere with the public's right to acquire information or ideas if it so desires. By restricting the number of sites whereat the plaintiff may locate, the City Commission effectively interferes with the public's right to have reasonable access to adult entertainment.

## IV.

■ While the court invalidates the subject Ordinances as unconstitutional as applied, the court is not of the view that zoning ordinances controlling the location of "adult" entertainment are unconstitutional *per se* under all conditions. Government should and does have the power to regulate those interests within the community whose existence and operation interfere with the peace and tranquility of the rest. In this case, the regulation of nudity was doubtless intended to preserve the tranquility of parks, schools, neighborhoods and the like; and no doubt to also make a moral statement about the kinds of activities that the City Fathers and Mothers thought acceptable. If the latter reasoning was countenanced by the Constitution, the will of the majority would always stifle the protected rights of the minority. The First Amendment safeguards the right of the unorthodox to speak or perform because We, the People of the United States, recognized long ago that "free" speech is not *free* unless all, mainstream and unorthodox alike, have the same right to speak, to act, and to disagree over how to speak and act.

This court recently observed in another context that "[n]either Congress nor the people intended that the Bill of Rights be a fatality in the war on drugs." *United States v. Certain Real Property,* 612 F.Supp. 1492, 1498, Case No. 85–8353–CIV–GONZALEZ, at 13 (1985). Likewise, neither should the First Amendment become a casualty in the battle to preserve the integrity of our schools, parks, churches and neighborhoods.

Important as those institutions and their values are to our society, they must nevertheless yield to the overriding interest of the American people in the preservation of their right to live and express themselves free from government intrusion.

Accordingly, it is

ORDERED AND ADJUDGED that the plaintiff's motion for a permanent injunction be and the same is hereby GRANTED, and the City of Fort Lauderdale is hereby permanently enjoined from enforcing Ordinances No. C–84–91 and C–84–100.

## APPENDIX A

### ORDINANCE NO. C–84–91

AN ORDINANCE ENACTING A NEW SECTION 5–9 OF THE CODE OF ORDINANCES OF THE CITY OF FORT LAUDERDALE, FLORIDA, TO PROHIBIT THE LOCATION OF ALCOHOLIC BEVERAGE ESTABLISHMENTS AT PARTICULAR LOCATIONS; PROVIDING FOR APPLICATION OF SAID PROHIBITION TO SUCH ESTABLISHMENTS IN EXISTENCE ON THE EFFECTIVE DATE OF THE ORDINANCE.

WHEREAS, the City Commission of the City of Fort Lauderdale finds that occurrence of nudity in alcoholic beverage establishments in close proximity to residential areas, churches, schools, parks and playgrounds has a detrimental effect on such

uses, and that the location of such establishments in close proximity to each other has a detrimental effect on the surrounding neighborhood; and

WHEREAS, the City Commission of the City of Fort Lauderdale, Florida, finds that in order to preserve public peace and good order, the integrity of residential neighborhoods and other sensitive land uses, it is necessary and advisable to regulate the location of alcoholic beverage establishments permitting nudity;

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COMMISSION OF THE CITY OF FORT LAUDERDALE, FLORIDA:

SECTION 1. Chapter 5 of the Code of Ordinances of the City of Fort Lauderdale, Florida, is hereby amended to create a new Section 5–9 as follows:

Sec. 5–9. Location of Alcoholic Beverage Establishments Permitting Nudity.

(a) For purposes of this section:

(1) "Alcoholic beverage establishment" means any establishment located in the City of Fort Lauderdale, Florida, at which alcoholic beverages are offered for sale for consumption on the premises.

(2) "Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than a full opaque covering; the showing of the female breast with less than a full opaque covering of any portion thereof below the top of the nipple; or the depiction of covered male genitals in a discernibly turgid state.

(b) No alcoholic beverage establishment permitting nudity is permitted:

(1) Within 750 feet of any residentially zoned ("R" districts) land;

(2) Within 750 feet of any church, school, public park or playground; or

(3) Within 750 feet of another alcoholic beverage establishment permitting nudity.

An alcoholic beverage establishment permits nudity under this section if any person maintaining, owning, managing or operating such establishment knowingly, or with reason to know, suffers or permits nudity to occur on the premises of such establishment.

(c) For purposes of this section, distance shall be by airline measurement from property line to property line.

SECTION 2. The provisions of this Ordinance shall be applied prospectively. Any alcoholic beverage establishment permitting nudity which is in existence on the effective date of this ordinance and which would otherwise be in violation of this ordinance may continue in existence as a nonconforming use; provided, however, that no such establishment may be enlarged or increased in size or be discontinued in use for a period of more than 180 days.

SECTION 3. That if any clause, section or other part of this Ordinance shall be held invalid or unconstitutional by any court of competent jurisdiction, the remainder of this Ordinance shall not be affected thereby, but shall remain in full force and effect.

SECTION 4. That all ordinances or parts of ordinances in conflict herewith, be and the same are hereby repealed.

SECTION 5. That this Ordinance shall be in full force and effect immediately upon and after its final passage.

PASSED FIRST READING this the 2nd day of October 1984.
PASSED SECOND READING this the 16th day of October, 1984.

/s/ Robert A. Dressler
Mayor
Robert A. Dressler

APPENDIX B

ORDINANCE NO. C–84–100

AN ORDINANCE AMENDING SUBSECTIONS (b) AND (c) OF SECTION 5–9 OF THE CODE OF ORDINANCES OF THE CITY OF FORT LAUDERDALE, FLORIDA, AS CREATED BY ORDINANCE NO. C–84–91 REGULATING THE LOCATION OF ALCOHOLIC BEVERAGE ESTABLISHMENTS PERMITTING NUDITY.

BE IT ORDAINED BY THE CITY COMMISSION OF THE CITY OF FORT LAUDERDALE, FLORIDA:

SECTION 1. Subsections (b) and (c) of Section 5-9 of the Code of Ordinances of the City of Fort Lauderdale, Florida, as created by Ordinance No. C-84-91, are hereby amended to read as follows:

Sec. 5-9. Location of Alcoholic Beverage Establishments Permitting Nudity.

\* \* \* \* \* \*

(b) No alcoholic beverage establishment permitting nudity is permitted on a parcel of land located:

(1) Within 750 feet of any ~~residentially zoned ("R" districts) land~~ parcel of land which is either zoned or used for residential uses or purposes;

(2) Within 750 feet of any parcel of land upon which a church, school, public park or playground is located; or

(3) Within 750 feet of any parcel of land upon which another alcoholic beverage establishment permitting nudity is located.

An alcoholic beverage establishment permits nudity under this section if any person maintaining, owning, managing or operating such establishment knowingly, or with reason to know, suffers or permits nudity to occur on the premises of such establishment.

(c) For purposes of this section, distance shall be by airline measurement from property line to property line, using the closest property lines of the parcels of land involved. The term "parcel of land" means any quantity of land capable of being described with such definiteness that its location and boundaries may be established, which is designated by its owner or developer as land to be used or developed as a unit or which has been used or developed as a unit.

SECTION 2. That if any clause, section or other part of this Ordinance shall be held invalid or unconstitutional by any court of competent jurisdiction, the remainder of this Ordinance shall not be affected thereby, but shall remain in full force and effect.

SECTION 3. That all ordinances or parts of ordinances in conflict herewith, be and the same are hereby repealed.

SECTION 4. That this Ordinance shall be in full force and effect immediately upon and after its final passage.

PASSED FIRST READING this the 20th day of November, 1984.

PASSED SECOND READING this the 4th day of December, 1984.

/s/ Robert A. Dressler
Mayor
Robert A. Dressler

APPENDIX C

CITY COMMISSION MEETING OF
OCTOBER 16, 1984

PARTIAL TRANSCRIPT

Nude Bar Ordinance.... (0-5)

Comm. Cox: Mr. Mayor, on 05 we were gonna get a map, I thought ...

Don Hall: Chuck Ritchie has some comments that he would like to make to the Commission on this ordinance concerning the thinking as to why it was necessary as well as the information Commissioner Cox asked for.

Chuck Ritchie: I'm Chuck Ritchie, Planning Director for Fort Lauderdale. We have prepared an overlay map indicating the present location of all of the bars under question at this moment plus general locations where other such establishments can be located within the City. Its an overlay map and I can have it for you in your Conference Room. It does not reproduce well for our video screen here. That has been completed and what I would like to add is an extra comment. I think by your action here you've gone a long way towards protecting the sanctity of our residential neighborhoods, our places of worship, our schools and our playgrounds to protect them from the influences that are not really necessary in this particular city. We find that this is probably a great step forward in this measure.

Comm. Young: Chuck, I think I heard you say you had a map where they can be

located. It shows where they could be ...

Mr. Ritchie: Ah ... The map was ...

Comm. Young: Thanks a lot.

Mr. Ritchie: The map was never intended to exclude them, it was to limit them to districts where they would not touch residential neighborhoods and we think that we have effectively done that.

The Mayor: Where is that map?

Connie Hoffmann: It's in the Conference Room.

Mr. Ritchie: The map will be for your review in our Conference Room.

Connie Hoffman: Is it there now?

Mr. Ritchie: It is not there now but it will be by the time you get there.

Comm. Young: Why I ask is because I presume they were from the Centerfold Lounge, but they called I guess last Friday afternoon wanting to know if this would affect them and I said from what I've seen of your sign, I don't know where you are going. Are they already licensed in Fort Lauderdale—what is their location?

Mr. Ritchie: I do not know where the Centerfold Lounge is moving at the current time. They are in the unincorporated area.

Comm. Young: They were in Dania before.

Comm. Young: This source says they were coming to Fort Lauderdale.

Connie Hoffmann: This ordinance, it takes effect immediately, doesn't it?

Don Hall: Lets take a look at it. I think so.

Comm. Young: They may invite you but not me.

Laughter

The Mayor: I think the ... Comm. Cox wanted to see the map I think before me ...

Mr. Ritchie: I can have it for you within five minutes.

Don Hall: I think whoever introduced it should introduce it with the amendment that Section 5 should read "That this ordinance shall be in full force and effect immediately following its final passage".

Comm. Cox: It hasn't been introduced yet, I simply brought up the point that I think that we should look at that map.

Comm. Young: and know where the ... I do too.

The Mayor: Lets just defer this until the map is here and we can see that ...

Comm. Cox: 06 I move to defer ...

Comm. Rodstrom: Well lets finish discussing that ... its not just the map. The wording has been changed so its not just commercial, as I read it too, is that right Don?

Don Hall: Yeh, thats right.

Comm. Rodstrom: O.K.

Comm. Cox: O.K., is a move—a motion to defer the second

Comm. Mills: Second

| Comm. Cox | Yes |
| Comm. Mills | Yes |
| Comm. Rodstrom | Yes |
| Comm. Young | Yes |
| Mayor Dressler | Yes |

Comm. Cox: I'll introduce the ordinance for second reading.

Comm. Rodstrom: Before you introduce the ordinance there is a couple of things that concern me. First of all, the way I read the ordinance—what did I do with it—O.K. It says in Section 591, alcoholic beverages, establishment means any establishment located in the City of Fort Lauderdale in which alcoholic beverages are offered for sale or consumption on the premises— would that mean they can have a bottle club without a liquor license and people could bring in their own bottles and then still have topless entertainment. Would that be a way to get around this ordinance.

Don Hall: Not the way its written.

Comm. Young: and I would guess ... John

Comm. Rodstrom: Alcoholic beverages offered for sales if they are not ...

Don Hall: Yeh, your right. Bottle clubs are not ... ah

Comm. Rodstrom: Then bottle clubs would not ...

Comm. Young: or the liquor is given away.

Comm. Rodstrom: If the liquor is given away and they charged a cover at the door so that you could see the topless entertainment then . . .

Don Hall: Except I think that violates provisions of the State Statute dealing with liquor licensing—giving away liquor—I'm not sure on that but, ahh, it seems to me that that is prohibited by the licensing.

The Mayor: I think John has got a point there. Isn't, aren't there some places, that are in fact, isn't that one in Oakland Park?

Comm. Rodstrom: Yeh ..

The Mayor: They've been operating . . .

Comm. Rodstrom: What I'm wondering, couldn't we just . . .

Don Hall: They don't have an alcoholic beverage license. They simply have been serving apple juice and that it not prohibited by ordinance.

Comm. Rodstrom: O.K. but could we change our ordinance to outlaw bottle clubs? Lets say somebody who wasn't purchasing—who was purchasing their own alcohol—but was purchasing the setups. I mean, could mean, to whoever reads this ordinance that wouldn't be illegal.

Don Hall: No, it wouldn't be.

Comm. Rodstrom: Well then, could we change this wording to say "alcoholic —which alcoholic beverages are offered for consumption—and not have the word sale.

Don Hall: I don't know.

Comm. Young: or which there are alcohol

Comm. Rodstrom: Right, on the premises.

Don Hall: I think what I would prefer to do is adopt this ordinance in this form and then let us explore that amendment.

Comm. Rodstrom: O.K.

Don Hall: As a refinement of it.

Comm. Rodstrom: The second question I have is when looking at that map . . . I would like to see us look at the zoning. Not as a requirement but more as the use in that neighborhood regardless of what the zoning is. Can we incorporate that also in the ordinance?

Comm. Young: Like the specific one that we looked at.

Don Hall: Sure. Yeh, the way we have it written now, it is zoning district not particular use specific. Yes, let's look into that as well as another further refinement.

Comm. Cox: I think thats a real problem because you can have uses, you can have a storefront church or something else. I think you've got some real problems with that one initially. Although, may be that area that you are concerned with on North Federal we should go back and do what we've done on a hundred of occasions is to rezone the area to its existing use. Yeh, so that, your quite right but I don't think we should do it in this ordinance.

Comm. Young: And is the effectively immediately part of the ordinance.

Don Hall: Thats what I was going to suggest, whoever introduces it requests with the effective date immediately upon adoption.

Comm. Cox: Yes.

Comm. Rodstrom: Bob has introduced it.

Comm. Cox: It has been introduced with the date effective.

The Mayor: O.K. and then, excuse me, but Don you'll come back with recommendations on both of those points.

Don Hall: Sure will.

AN ORDINANCE ENACTING A NEW SECTION 5–9 OF THE CODE OF ORDINANCES OF THE CITY OF FORT LAUDERDALE, FLORIDA, TO PROHIBIT THE LOCATION OF ALCOHOLIC BEVERAGE ESTABLSHMENTS AT PARTICULAR LOCATIONS, PROVIDING FOR APPLICATION OF SAID PROHIBITION TO SUCH ESTABLISHMENTS IN EXISTENCE ON THE EFFECTIVE DATE OF THE ORDINANCE.

| | |
|---|---|
| Comm. Cox | Yes |
| Comm. Mills | Yes |
| Comm. Rodstrom | Yes |

Comm. Young Yes
Mayor Dressler Yes

I HEREBY CERTIFY that this is a true and accurate transcription of that portion of the meeting of the City Commission of the City of Fort Lauderdale held on October 16, 1984, pertaining to Ordinance No. C–84–91.